# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 2:07 cv 0235 DB |
| PLAINTIFF, | **ORDER AND MEMORANDUM DECISION** |
| v. | |
| NOVUS TECHNOLOGIES, LLC, a Utah limited liability company, RALPH W. THOMPSON, JR., DUANE C. JOHNSON, RCH2, LLC, a Utah limited liability company, ROBERT CASEY HALL and ERIC J. WHEELER | Judge Dee Benson<br><br>Magistrate Judge Brooke C. Wells |
| DEFENDANTS,<br>and | |
| U.S. VENTURES, LC, a Utah limited liability company, U.S. VENTURES INTERNATIONAL, LLC, a Utah limited liability company, ROBERT L. HOLLOWAY, ONLINE STRATEGIES GROUP, INC., a Delaware corporation, and DAVID STORY | |
| RELIEF DEFENDANTS. | |

JPMorgan Chase Bank seeks to intervene[1] in this SEC enforcement action pursuant to Federal Rule 24(b)(2).[2] Chase argues that it should be allowed to intervene because no party in the case protects its interests. According to Chase, part of the money that was invested in the Ponzi scheme which is at the heart of the SEC enforcement action came from fraudulent loans obtained from Chase. Thus, by intervening Chase hopes to trace those funds it believes belong to Chase that may be part of the assets collected by the receiver.[3] Chase's proposed Complaint seeks a "constructive trust in assets recovered by the Receiver that would be payable to Chase's borrowers."[4] The SEC opposes Chase's attempt to intervene arguing that section 21(g) of the Securities Exchange Act of 1934 is an absolute bar to intervention. The SEC further argues that if Chase intervenes it will unduly complicate the case and adversely affect the current posture of the case, which according to the SEC is close to resolution. Notably, there is a split of authority across the country regarding the SEC's position concerning Section 21(g). After considering the varied and contrasting case law, the parties arguments and memoranda, and after hearing oral argument,[5] the court exercises its discretion under Rule 24(b)(2)[6] and DENIES Chase's motion to intervene.

---

[1] Docket no. 141, filed July 31, 2007.
[2] *See* Fed. R. Civ. P. 24(b)(2).
[3] At the time of this order Chase believes its losses are approximately $3.8 million.
[4] Reply mem. p. 2.
[5] Oral argument was held on December 18, 2007. The SEC was represented by *inter alia*, Karen Martinez and Chase was represented by John Beckstead.
[6] *See City of Stilwell v. Ozarks Rural Elec. Coop. Corp.*, 79 F.3d 1038, 1043 (10th Cir. 1996) (stating that the decision of whether or not to allow intervention under Rule 24(b)(2) is a matter within the district court's discretion).

## I. Background

On April 11, 2007, the SEC brought this enforcement action and the court entered a Temporary Restraining Order freezing assets and prohibiting the destruction of documents. The SEC's Complaint alleges Defendants violated various securities laws and developed a Ponzi scheme to hide the losses from the illegal securities.[7] One of the Defendants, Eric Wheeler, was employed by Chase and allegedly made fraudulent loans to investors that were used to invest in Defendants Novus and RCH2. During the course of discovery the SEC determined that of the sixty-seven investors in Novus, approximately twenty-three obtained lines of credit from Chase.[8] And, approximately eleven of the forty-five investors in RCH2 obtained similar lines of credit from Chase. Chase alleges that it has suffered losses of approximately $3.8 million. During discovery the SEC also determined that investors obtained loans from other financial institutions which were then invested in Novus, RCH2 and their related entities. On May 16, 2007, the court appointed Lon A. Jenkins of the firm Ray Quinney & Nebeker as Receiver for Novus, RCH2, and their related entities.[9] At issue now is whether or not Chase should be permitted to intervene and be given the opportunity to place a constructive trust on funds it argues came from fraudulent loans.

---

[7] *See* Compl. 2-10
[8] *See* Op. p. 3.
[9] Docket nos. 61 and 62.

## II. Discussion[10]

Chase seeks to intervene in this action pursuant to Rule 24(b)(2). Rule 24(b)(2) states, "Upon timely application anyone may be permitted to intervene in an action: (2) when an applicant's claim or defense and the main action have a question of law or fact in common."[11] Chase asserts that it is the largest claimant to the receivership estate yet, no one in this action represents Chase's interests including the Receiver. According to Chase, the "positions of Chase and the borrowers/investors are adverse and in conflict"[12] because Chase seeks priority over the claims of the borrowers/investors. Chase argues intervention is appropriate under Rule 24(b)(2) because its application is timely, there are "extensive common questions of fact and law"[13] and intervention will not cause delay or prejudice to the original parties. In support of its position Chase primarily relies upon two cases. A decision out of the District of Kansas permitting intervention in an SEC enforcement action, *SEC v. Kings Real Estate Investment Trust*,[14] and a

---

[10] On December 20, 2007, following the hearing held on Chase's motion, the court received a memorandum from the Receiver opposing Chase's intervention. Chase filed a corrected response opposing the Receiver's memorandum on December 27, 2007 seeking to strike the Receiver's memorandum as improper. As noted by Chase, "The Post-Hearing Brief does not present any new law or facts that were overlooked in the other memoranda or in oral argument." Chase's Rep. p. 2. Therefore, the court finds it unnecessary to strike the memoranda. Moreover, Chase has had the opportunity to respond, so there would be no prejudice to Chase in not striking the memorandum.

[11] Fed. R. Civ. P. 24(b)(2). Congress proposed an amendment to this rule that was to take effect on December 1, 2007. The proposed amendment, however, is essentially the same save for a few organizational changes. The court cites to the wording of the rule in place at the time of Chase's motion which is prior to any amendment, but the proposed changes would not effect the court's decision.

[12] Mem. in Supp. p. 3.

[13] *Id.* at p. 2.

[14] 222 F.R.D. 660 (D.Kan. 2004).

decision reached by Magistrate Judge Nuffer in *SEC v. Merrill Scott & Assoc.*, a case from this court.[15]

In opposition the SEC argues that Chase's attempt to intervene is barred by Section 21(g) of the Securities Exchange Act of 1934 and Rule 24(a) does not provide a right to intervene.[16] The SEC next argues that even if the court finds that 21(g) is not a complete bar to intervention, the court "should preclude Chase from intervening because doing so would needlessly complicate this litigation and distract the Commission from its enforcement efforts."[17] Finally, the SEC asserts that Chase should be precluded from intervening because "there is no common question of law or fact between the main enforcement action and the allegations in Chase's proposed complaint."[18]

**1. Section 21(g)**

The SEC argues that Chase's motion to intervene is barred by statute, specifically section 21(g) of the Exchange Act. Section 21(g) of the Exchange Act (15 U.S.C. § 78u(g)) provides:

> (g) Consolidation of actions; consent of Commission
> Notwithstanding the provisions of section 1407(a) of Title 28, or any other provision of law, no action for equitable relief instituted by the Commission pursuant to the securities laws shall be consolidated or coordinated with other actions not brought by the Commission, even though such actions may involve common questions of fact, unless such consolidation is consented to by the Commission.[19]

---

[15] *See* 2:02-CV-039 TC.
[16] *See* Op. p. 2.
[17] *Id.*
[18] *Id.*
[19] 15 U.S.C. § 78u(g) (2002).

In support of this argument the SEC relies on a line of cases that has adopted the general position that entities seeking to intervene in an action brought by the SEC are "blocked from entering [the] lawsuit by an impenetrable wall, Securities Exchange Act of 1934 . . . § 21(g), 15 U.S.C. § 78u(g)."[20]

The SEC also cites to the Supreme Court case *Parklane Hosiery Co. v. Shore*[21] as support for its position. *Parklane* involved a stockholder's class action suit for damages against a corporation, its officers, directors and other stockholders who allegedly issued a materially false and misleading proxy statement in violation of the securities laws.[22] The SEC filed a separate suit against the same defendants alleging essentially the same violations of law as those alleged in the shareholder suit. After the SEC prevailed on declaratory judgment in the separate action, the shareholders sought to apply the doctrine of collateral estoppel preventing the defendants from relitigating the issue of whether or not the proxy statements were materially false and misleading.[23] In essence the plaintiffs sought the offensive use of collateral estoppel. The Supreme Court held that the use of offensive collateral estoppel-as sought by the plaintiffs-would not violate the Seventh Amendment right to a jury trial.

---

[20] *SEC v. Wozniak*, 1993 U.S. Dist. Lexis 1241 *1 (N.D.Ill Feb. 8, 1993); *see also SEC v. Homa*, 2000 U.S. Dist. Lexis 14582 *6 (N.D.Ill. September 29, 2000) (concluding that the plain language of Section 21(g) bars intervention in a Commission enforcement action); *SEC v. Thrasher*, 1995 U.S. Dist. Lexis 10775 *9 (S.D.N.Y. Aug. 2, 1995) (holding that section 21(g) bars the defendant's third-party claims and cross-claims).
[21] 439 U.S. 322 (1979).
[22] *See id.* at 322.
[23] *See id.*

The SEC specifically relies on dicta found in a footnote in the *Parklane*[24] decision. In reference to 15 U.S.C. § 78u(g) the Supreme Court stated "consolidation of a private action with one brought by the SEC without its consent is prohibited by statute."[25] According to the SEC, the Supreme Court's statement is consistent with the purpose of the statute, which is to "preclude any interference by private parties in Commission law enforcement proceedings without Commission consent."[26] Therefore, Chase should not be allowed to create interference in this enforcement proceeding by intervening.

In contrast to those cases cited to by the SEC are a number of cases holding that 15 U.S.C. § 78u(g) does not limit the rights of prospective interveners. Generally these cases examine the language of the statute and the purpose behind it. For example, the Eighth Circuit has stated:

> the purpose of the subsection is simply to exempt the Commission from the compulsory consolidation and coordination provisions applicable to multidistrict litigation. It does not say that no one may intervene in an action brought by the SEC without its consent. It does not mention Fed. R. Civ. P. 24, nor does Rule 24 contain any clause giving special privileges to the SEC.[27]

The Tenth Circuit has not specifically addressed whether or not Section 21(g) is an absolute bar to intervention. In *S.E.C. v. Kings Real Estate Investment Trust*,[28] however, a sister

---

[24] 439 U.S. 322, 332 n. 17.
[25] *Id.* at 332 n. 17.
[26] Op. p. 5.
[27] *S.E.C. v. Flight Transp. Corp.*, 699 F.2d 943, 950 (8th Cir. 1983); *see also S.E.C. v. Credit Bancorp, Ltd.*, 194 F.R.D. 457, 466 (S.D.N.Y. 2000).
[28] 222 F.R.D. 660 (D.Kan. 2004).

court in this circuit, the District of Kansas, held that Section 21(g) does not serve as an impenetrable wall to intervention. That court thoroughly analyzed the differing case law and the legislative history behind the statue in finding that "Section 21(g) does not automatically preclude intervention in S.E.C. enforcement actions."[29]

> The holding in *Wozniak* notwithstanding, the Court finds no support for the proposition that Congress, by including only the words "coordinate" and "consolidate" in the language of Section 21(g), meant for that provision to apply to all possible interventions in S.E.C. enforcement actions . . . "there is no persuasive authority which suggests that [S]ection 21(g) . . . bars intervention in all SEC enforcement actions."[30]

The court finds the reasoning in *Kings Real Estate* persuasive. The Supreme Court in *Parklane Hosiery*,[31] does reference Section 21(g) but only to the extent that the Supreme Court appears to confirm that Section 21(g) does not permit consolidation or coordination of SEC enforcement actions with private suits. The Supreme Court, however, does not address intervention like that sought in this case. Moreover, the legislative history behind the statute, the plain language of the statute and Rule 24(b) do not support the SEC's position that Section 21(g) is an absolute bar to intervention.[32]

Accordingly, the court concludes that Section 21(g) is not a complete bar to intervention by Chase.

---

[29] *Id.* at 664.
[30] *Id.* at 667 (quoting *S.E.C. v. Prudential Sec. Inc.*, 171 F.R.D. 1, 3 (D.D.C. 1997) (rejecting Section 21(g) as a bar to non-consensual intervention in certain S.E.C. actions) (alteration in original)).
[31] 439 U.S. 322, 99 S.Ct. 645 (1979).
[32] *See Kings Real Estate*, 222 F.R.D. 660 for a detailed analysis of the legislative history behind the statute.

**2. Rule 24(b)(2)**

Rule 24(b)(2) states, "Upon timely application anyone may be permitted to intervene in an action: (2) when an applicant's claim or defense and the main action have a question of law or fact in common."[33]  Chase argues intervention should be allowed because its application is timely and there are common questions of fact and law.  In contrast, the SEC argues that there is no common question of law or fact between the main enforcement action and Chase's proposed complaint.

This case was filed in April 2007 and Chase's motion was filed in July 2007.  Therefore the court finds Chase's motion to intervene is timely.

Chase alleges that the following are common issues of law and fact: (1) what type of conversations occurred between Eric Wheeler and the investors?  (2) What representations were made to Chase's borrowers? And (3) how will the assets be distributed?[34]  Admittedly there does appear to be some overlap between the Commission's fraud claim and Chase's interest in showing the borrowers/investors knowingly cooperated with Mr. Wheeler in creating the fraud scheme.  Despite the appearance of some overlap of issues, however, the court agrees with the SEC that Chase's complaint focuses on the investors and their alleged fraudulent conduct in obtaining loans not whether or not the federal securities laws were violated by Defendants.  Chase's proposed complaint is more concerned with compensating an investor-Chase, although it

---

[33] Fed. R. Civ. P. 24(b)(2).
[34] *See* Chase's Rep. p. 7.

may have been an unwilling investor-not protecting the public or forcing Defendants to give up their unjust enrichment.[35]  As noted by the Commission, the primary purpose of enforcement actions is not to compensate investors.[36]

Accordingly, the court finds that the main action brought by the SEC and Chase's proposed complaint do not share the requisite common issue of law and fact.

Finally, the court is also concerned with the potential for complicating this case.  In *SEC v. Merrill*, Judge Nuffer allowed a secured creditor to intervene based upon a right to intervene under Rule 24(a) two and a half years into the case following interim agreements between the intervener and receiver regarding the property.  In essence, the intervener in *Merrill* was seeking a "place at the table" toward the end of the case.  Here, Chase, most likely at best an unsecured creditor,[37] seeks permissive intervention at an early phase.  If the court were to allow Chase to intervene, then other financial institutions which may be in a similar situation as Chase,[38] would likely seek to intervene.  And, certainly the investors whose purported assets would be affected by a constructive trust would seek to intervene.  The court believes it is best to consider the question of who owns which assets after they have been marshaled by the Receiver not while the process is ongoing.

---

[35] *See generally* SEC v. Ralston Purina Co., 346 U.S. 119, 124 (1952).
[36] *See* SEC v. Cavanagh, 445 F.3d 105, 117 (2nd Cir. 2006); SEC v. Commonwealth Chem. Sec., Inc., 574 F.2d 90, 102 (2nd Cir. 1978) ("However, the primary purpose of disgorgement is not to compensate investors.  Unlike damages, it is a method of forcing a defendant to give up the amount by which he was unjustly enriched.").
[37] There is some dispute regarding whether or not Chase has a claim upon the receivership estate.  The court makes no determination of Chase's status at this time.
[38] *See* Op. p. 4.

Accordingly, for the forgoing reasons Chase's Motion to Intervene is DENIED.

DATED this 10th day of January, 2008.

                              Brooke C. Wells
                              United States Magistrate Judge