*Prepared and Submitted By:*

Lon A. Jenkins (Utah State Bar No. 4060)
Mary Margaret Hunt (Utah State Bar No. 6060)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah  84145-0385
Telephone:  (801) 532-1500
Facsimile:  (801) 532-7543
Email: ljenkins@rqn.com
Email: phunt@rqn.com

*Receiver and Attorney for the Receiver*

## UNITED STATES DISTRICT COURT DISTRICT OF UTAH

### CENTRAL DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>NOVUS TECHNOLOGIES, LLC, a Utah limited liability company, RALPH W. THOMPSON, JR., DUANE C. JOHNSON, RCH2, LLC a Utah limited liability company, ROBERT CASEY HALL AND ERIC J. WHEELER,<br><br>    Defendants,<br><br>And<br><br>U.S. VENTURES, LC., a Utah limited liability company, U.S. VENTURES INTERNATIONAL, LLC, a Utah limited liability company, ROBERT L. HOLLOWAY, ONLINE STRATEGIES GROUP, INC., a Delaware corporation, and DAVID STORY,<br><br>    Relief Defendants | Civil No. 2:07-CV-00235 DB<br><br>**REPORT AND RECOMMENDATION REGARDING ORDER TO SHOW CAUSE AS TO WHY BRUCE S. FRANK, ESQ. SHOULD NOT BE REQUIRED TO DISGORGE FUNDS OF THE RECEIVERSHIP ESTATE AND NOTICE OF PROCEDURES RELATED THEREOF**<br><br>The Honorable Dee Benson<br><br>Magistrate Brooke C. Wells<br><br>**[FILED ELECTRONICALLY]** |

The matter before the Court is the Order to Show Cause Why Bruce S. Frank, Esq. Should Not Be Required to Disgorge Funds of the Receivership Estate [Docket No. 230] (the "OSC"). Notice of the hearing on the OSC was properly noticed by service of the OSC via ECF, and as set forth in greater detail below, by personal service. No response to the OSC was filed. A hearing on the OSC was held on February 28, 2008. Peggy Hunt, Ray Quinney and Nebeker, P.C., appeared on behalf of Lon A. Jenkins, the Court-Appointed Receiver ("Receiver"), who also entered an appearance; and Neil A. Kaplan, Clyde, Snow, Sessions & Swenson, appeared on behalf of Defendant Duane C. Johnson ("Johnson"). Bruce S. Frank, Esq. ("Frank") did not appear at the hearing as ordered in the OSC. Accordingly, pursuant to 28 U.S.C. § 636(e)(1) and (6), applicable law and good cause shown, the Court hereby enters this Report and Recommendation recommending that Frank be held in civil contempt of Court, and certifies this matter to the District Court for disposition.

## CERTIFICATION OF FACTS

### Commencement of the Case

1. On April 11, 2007, the Securities and Exchange Commission ("SEC") commenced the above-captioned enforcement action, alleging that Novus Technologies, LLC ("Novus"), Ralph W. Thompson, Jr. ("Thompson") and Johnson, together with other parties, engaged in fraud and in numerous acts and omissions in violation of the Securities Act of 1933 and the Securities Exchange Act of 1934 by operating "Ponzi" schemes that have defrauded investors of millions of dollars. *See* Complaint [Docket No. 1].

2. Pursuant to the General Order of Reference in DUCivR 72-1 and an Order of Reference entered on May 16, 2007 [Docket No. 57] as reaffirmed by Notice entered by the

Court on November 9, 2007 [Docket No. 178], this case has been referred to this Court pursuant to 28 U.S.C. § 636(a)(1)-(2) and (b)(1)(A).

### Payment of Receivership Estate Funds to Frank

3.     It is alleged that Frank, an attorney admitted to practice in the State of New York, represented Defendants Novus, Thompson and Johnson for at least several months prior to the SEC's commencement of this action.

4.     On April 11, 2007, the same day that the SEC filed this action, the Court entered an "Order Freezing Assets and Prohibiting Destruction of Documents" [Docket No. 10], and shortly thereafter an "Amended Order Freezing Assets and Prohibiting Destruction of Documents" [Docket No. 14] (collectively, the "Asset Freeze Orders"), freezing the assets of, among others, the Novus, Thompson and Johnson and related entities (the "Novus Parties"). The asset freeze provided for in the Asset Freeze Orders was continued indefinitely pursuant to a "Stipulated Preliminary Injunction Regarding Novus Technologies, LLC, Ralph W. Thompson, Jr. and Duane C. Johnson" [Docket No. 20], entered by the Court on April 16, 2007. *See* Stipulation related to the Stipulated Preliminary Injunction [Docket No. 15]. The Stipulation was agreed to and the Stipulated Preliminary Injunction was approved as to form by Frank as "Counsel for Novus Technologies, LLC, Ralph W. Thompson and Duane C. Johnson." Docket No. 15, Stipulation at 2; Docket No. 20, Stipulated Preliminary Injunction at 3.

5.     On May 14, 2007, a "Stipulation" was filed in this case by the SEC [Docket No. 52] between the SEC, on the one hand, and Novus, Thompson and Johnson, through their counsel Frank, on the other hand, agreeing, among other things, to the appointment of the Receiver, and the payment of a retainer to Frank in the amount of $100,000 from funds on

deposit in a bank account subject to the Asset Freeze Orders. The retainer to be paid to Frank was purportedly to enable Defendants Thompson and Johnson to pay the costs of defending this case.

6. On May 18, 2007, the Court entered an "Order Appointing Receiver" ("Appointment Order") [Docket No. 62], approving the portion of the Stipulation related to the appointment of the Receiver for Novus and entities related to Novus, Thompson and Johnson, thus creating a "Receivership Estate."

7. On the same day that the Court entered the Appointment Order, it also entered a "Stipulated Order for Distribution of Funds" [Docket No. 64], approving, in relevant, the portion of the Stipulation related to the limited distribution of funds to be made from the Receivership Estate. Upon his appointment, however, the Receiver discovered that certain accounts from which distributions were intended to be made were not available to the Receiver because Novus had used them as collateral for other loans, requiring the Receiver to make a supplemental motion to the Court to carry out the intent of the SEC and the Defendants. *See* Motion Seeking Approval of Stipulation and Authorization to Make Payments from Funds of Novus Technologies, LLC [Docket No. 80]. Subsequently, on June 5, 2007, the Court entered an "Order Granting Receiver's Motion Seeking Approval of Stipulation and Authorization to Make Payments From Funds of Novus Technologies, LLC" [Docket No. 86], authorizing certain other limited distributions to be made by the Receiver (collectively, the Orders are referred to as the "Distribution Orders").

8. Pursuant to the Distribution Orders, the Receiver paid to Frank a total of $100,000 from funds of the Novus Receivership Estate.

**Frank's Admission to Appear *Pro Hac Vice* in this Court**

9. On June 29, 2007, David Turcotte ("Turcotte"), an attorney licensed to practice in the State of Utah, filed a "Motion for Pro Hac Vice Admission and Consent of Local Counsel" ("*Pro Hac Vice* Motion") [Docket No. 116], seeking the *pro hac vice* admission of Frank to represent Thompson and Johnson in this case, with Turcotte serving as local counsel. In the "Application for Admission Pro Hac Vice" attached as Exhibit A to the *Pro Hac Vice* Motion ("*Pro Hac Vice* Application"), Frank disclosed that he had been subject to disciplinary action by the New York State Bar for "overlooking 2 small matters" which he then explained. *Pro Hac Vice* Application at 1, *attached as* Exhibit A to the *Pro Hac Vice* Motion. The *Pro Hac Vice* Motion was granted by the Court by Order entered on July 2, 2007 [Docket No. 117].

10. As an attorney admitted to practice in this Court, Frank is governed by and was required to comply with the rules of practice adopted by this Court and with the Utah Rules of Professional Conduct, as revised and amended and as interpreted by this Court. DUCivR 83-1.1(h). Additionally, Frank became obligated to immediately update the Clerk of Court with any change of contact information, including address and email account information registered with the Court. Id. 83-1-3(b).

11. The record reflects that Frank has not updated or changed the contact information that he provided to the Court in his *Pro Hac Vice* Application, and the Receiver and Johnson have represented that they have not been informed by Frank of any change in his contact information.

### Frank's Apparent Abandonment of the Case

12.     The Receiver maintains that since Frank received the $100,000 retainer, the Receiver has had virtually no communications with Frank as Frank simply has not responded to the Receiver's requests for information made by e-mail, telephone, and/or mail through the contact information registered with Court in Frank's *Pro Hac Vice* Application.

13.     Johnson, his current counsel and Turcotte have all represented that they, too, have not been able to communicate with Frank for many months.  *See* Notice & Request For Leave to Withdraw as Counsel for All Defendants at 2 [Docket No. 191] (in requesting authorization to withdraw as counsel, Turcotte states that he "ascertained that Mr. Frank had abandoned the case" because "[s]hortly after appearing, Mr. Frank ceased all communication with Turcotte, ceased communicating with opposing counsel and the receiver."); Johnson's Memorandum of Law in Support of Motion to Disqualify Counsel [Docket No. 195] ¶ 6 ("Mr. Frank has never responded [to Johnson's request for him to provide an accounting of funds Johnson claimed he paid to Frank (in addition to the $100,000 retainer) after the commencement of the case] despite several attempts to communicate with him by email and U.S. mail.").

14.     On September 19, 2007, Turcotte filed a "Substitution of Counsel" [Docket No. 161], indicating that Frank was withdrawing as counsel for Thompson.  Frank, who was served with this document through ECF at the email address he provided to the Court, did not file any paper in response to the Substitution of Counsel.

### Demands for Repayment and Accounting

15.     By letter to Frank dated October 8, 2007, the Receiver demanded that Frank return the $100,000 that had been paid to him from the Novus Receivership Estate.  A copy of

this letter is attached as Exhibit 2 to the Receiver's Memorandum of Law in Support of his Motion for an OSC [Docket No. 198].

16.     The Receiver has represented to the Court that Frank did not return the funds in response to the Receiver's letter and did not respond to the Receiver's demand.

17.     By letter to Frank dated October 26, 2007, the Receiver demanded that Frank return the $100,000 that had been paid to him from the Novus Receivership Estate within ten (10) days. A copy of this letter is attached hereto as Exhibit 3 to the Receiver's Memorandum of Law in Support of his Motion for an OSC [Docket No. 198]. The Receiver represents that he sent this letter to Frank on October 26, 2007 at the address listed in Frank's *Pro Hac Vice* Application by both first class and certified United States mail, and that when he was informed that the letter was "unclaimed," he again sent the letter to Frank on November 27, 2007 via email to the email address that Frank had provided to the Court.

18.     Again, the Receiver represents that Frank did not return the $100,000, or even contact the Receiver about the demand.

19.     Johnson maintains that as early as September 2007 he requested that Frank account for certain funds that he paid to Frank after the commencement of this case,[1] but that he has not received any response from Johnson, other than an email sent from the email address registered with the Court allegedly stating that the money Johnson gave him is safe. *See* Johnson's Memorandum of Law in Support of Motion to Disqualify Counsel [Docket No. 195] ¶¶ 6-7.

---

[1] Apparently, Johnson paid Frank at least $697,000 after the commencement of this case. Whether these funds were paid in violation of the Asset Freeze Orders or from funds of the Receivership Estate is an issue that has not been addressed.

## The OSC

20. On December 21, 2007, the Receiver filed a Motion Seeking an Order to Show Cause as to Why Bruce S. Frank, Esq. Should Not be Required to Disgorge Funds of the Receivership Estate [Docket No. 197] and a Memorandum of Law in support thereof [Docket No. 198] (collectively, the "OSC Motion").

21. The OSC Motion was electronically filed with the Court by the Receiver and was served on Frank via ECF at the email address that he registered with the Court. Frank was also personally served with the OSC Motion on December 27, 2007. Affidavit of Service filed December 27, 2007 [Docket No. 202].

22. On January 15, 2008, the Court issued an Amended Notice of Hearing [Docket No. 209], scheduling a hearing on the OSC Motion for January 25, 2008 in conjunction with a hearing on Johnson's motion to disqualify Frank and Turcotte as his counsel (the "Disqualification Motion"). Both this Notice, as well as the original Notice of Hearing [Docket No. 208], stated that Frank was to appear at the hearing. The Notices of Hearing were served via ECF, including on Frank at the email address he registered with the Court.

23. Frank did not appear at the hearing on the OSC Motion on January 25, 2008.

24. On January 30, 2008, the Court entered the OSC [Docket No. 230], requiring in material part, that Frank (a) appear at hearing on February 28, 2008 to address issues related to Johnson's Disqualification Motion and the Reciever's OSC Motion, (b) file a response to the OSC within five days of personal service thereof, and (c) that such response provide an accounting of funds paid to him and include financial documents as set forth in ¶¶ 5-7 of the

OSC.  The docket entry related to the OSC states that a hearing on the OSC would take place on February 28, 2008 at 10:00 a.m. before this Court.  Docket No. 230.

25.     The OSC expressly states that "Frank's failure to comply with any provision herein will be deemed to be a contempt of Court."  OSC ¶ 8.

26.     The OSC was personally served on Frank on January 30, 2008.  Affidavit of Service filed February 4, 2008 [Docket No. 234].  Also, being electronically filed by the Court, the docket entry with the hearing date and the OSC itself were served on Frank via ECF at the email address he registered with the Court.

27.     Frank did not file a response to the OSC within five days of personal service therewith as required under the express terms of the OSC.

28.     Frank did not appear at the scheduled and noticed hearing on February 28, 2008.

## DISCUSSION

It is well-settled that "'a district court has broad discretion in using its contempt power to require adherence to court orders.'" <u>Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.</u>, 84 F.3d 367, 370 (10th Cir. 1986) (quoting <u>United States v. Riewe</u>, 676 F.2d 418, 420 (10th Cir. 1982)). Civil contempt has a remedial objective and seeks to compel compliance with a Court's order. <u>International Union, United Mine Workers of America v. Bagwell</u>, 512 U.S. 821, 827-28 (1994). To hold a person in civil contempt, the Court must find, by clear and convincing evidence, that:

(1)     a valid court order exists;

(2)     the contemptor had knowledge of the order; and

(3)     the contemptor has disobeyed the order.

Federal Trade Comm. v. Kuykendall, 371 F.3d 745, 756-57 (10th Cir. 2004). Once the moving party establishes a *prima facie* case, the alleged contemptor must produce evidence explaining his or her noncompliance. O'Conner v. Midwest Pipe Fabrications, Inc., 972 F.2d 1204, 1210-11 (10th Cir. 1992) (citing cases). Here, the Receiver has met his burden of establishing that Frank is in civil contempt, and despite notice and opportunity to be heard, Frank has failed to appear and explain his noncompliance with the OSC.

**Civil Contempt Has Been Established**

The OSC is a valid order entered by a Court of competent jurisdiction after affording Frank due process. Also, Frank had knowledge of the OSC. He was personally served with the OSC, and both the docket entry (which included the hearing date) and the OSC were served on Frank at the email address he has registered with the Court. *See* Fed. R. Civ. P. 4.1(b). Finally, Frank clearly disobeyed the Court's OSC because he did not respond to the OSC or appear at the scheduled hearing.

**Due Process Has Been Afforded To Frank, And He Has Not Explained His Noncompliance**

Due process requires that a potential contemptor be afforded reasonable notice and an opportunity to be heard prior to the entry of a civil contempt order. Kuykendall, 371 F.3d at 755. It does not, however, require an evidentiary hearing if there are no genuine issues of material fact. *See, e.g.*, Bagwell, 512 U.S. at 827; United States v. McVeigh, 896 F. Supp. 1549, 1555 (W.D. Okla. 1995) (citing cases).

Frank has been afforded reasonable notice of the OSC and an opportunity to be heard. The OSC Motion was personally served on Frank. It (1) sets forth the basis for the OSC, (2) unequivocally sets forth Frank's obligation and time to respond to the OSC, (3) identifies the

documents that he was to produce as part of his response, and (4) requires that he personally appear at the February 28, 2008 hearing.  The OSC expressly states that if Frank does not comply with any of its provisions he would be deemed in contempt of Court.  Thus, the OSC put Frank on notice of its terms, the potential contempt, and the method by which he could avoid being held in contempt.

In addition to these undisputed facts, it cannot be disputed that Frank did not respond to the OSC or appear at the scheduled hearing.  Thus, the Court need not conduct an evidentiary hearing prior to entering an order of contempt because there is no genuine issue of material fact that due process has been afforded, that Frank knew about the OSC and disobeyed it, and that he has failed to timely explain his reasons for failing to comply with the OSC.

**Appropriate Relief**

"Sanctions for civil contempt may be employed only for either or both of two remedial purposes: '(1) to compel or coerce obedience to a court order. . . ; and (2) to compensate the contemnor's noncompliance.'"  O'Conner, 972 at 1211 (quoting Shuffler v. Heritage Bank, 720 F.2d 1141, 1147 (9th Cir. 1983)).  Furthermore, in O'Conner, the Tenth Circuit stated:

> Where the purpose of the sanction is "coercive," the court must consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired.  The Supreme Court has also recently cautioned that a court must exercise the least possible power adequate to the end proposed.  To be consistent with these principles civil sanctions may only continue until terminated by compliance.
>
> On the other hand, "[i]f a fine is imposed for compensatory purposes, the amount of the fine must be based upon the complainant's actual losses sustained as a result of the contumacy."

972 F.2d at 1211 (10th Cir. 1992) (quotations and citations omitted).   In the case of compensatory fines, the Court should have some factual basis for determining the reasonableness

of any fees and costs requested for compensatory purposes. *See, e.g.*, id.; Allied Materials Corp. v. Superior Prods. Co., 620 F.2d 224, 227 (10th Cir. 1980).

At the hearing, the Receiver requested that a coercive daily fine in the amount of $500.00 be assessed against Frank, that the Receiver be reimbursed for any reasonable costs that the Receivership Estate has incurred related to the OSC, and that Frank be incarcerated if he does not comply with the OSC by a date certain.  In addition, although the Receiver made clear that he was primarily interested in compelling Frank's compliance with the OSC, he represented that the facts herein may warrant criminal contempt in light of the fact that Frank is an officer of this Court and the concerns addressed in the OSC relate to Frank's possible misuse or misappropriation of funds of the Receivership Estate.

## **RECOMMENDATION**

Based on the facts certified herein and the applicable law set forth above, it is HEREBY RECOMMENDED that:

1. Frank be found to be in civil contempt of the OSC.

2. Frank be incarcerated if fifteen (15) days after the entry of an Order of the District Court approving this Report and Recommendation the Receiver files a certificate of non-compliance with the Court stating that Frank has failed to fully comply with the OSC by (a) responding to the OSC as required in ¶¶ 5-7 of the OSC, and (b) by arranging with the Receiver to personally appear at the office of the Receiver, 36 South State Street, Suite 1400, Salt Lake City, Utah within the 15-day period to be deposed under penalty of perjury.

3. From the date of the entry of an Order approving the Report and Recommendation, Frank should be fined $500.00 for each day that he fails to comply with the

OSC as set for in ¶ 2 above until the earlier of (a) the date he complies with the OSC, or (b) the date that he is incarcerated.  Frank should be expressly prohibited from paying any applicable fine from funds which he received from the Receiver, any of the Defendants in this case and/or any persons or entities that are related to this case.

4. The Receiver be entitled to reasonable fees and costs incurred in relation to the OSC Motion and the OSC, which shall be established by filing with the Court an application outlining those fees and costs.  Upon filing of the application, the Court will evaluate the reasonableness of the fees and costs and enter judgment accordingly.

5. The Court does not consider criminal contempt at this time, but may do so in the future if appropriate.

### NOTICE OF PROCEDURES RELATED TO THIS REPORT AND RECOMMENDATION

A. The Clerk is DIRECTED to mail a copy of this Report and Recommendation to Bruce S. Frank, Esq. at 57 Shore Drive, Blooming Grove, N.Y. 10914.  A copy of this Report and Recommendation shall also be personally served on Frank by the Receiver.

B. Within ten days after service of a copy of this Report and Recommendation, Frank may serve and file a written objection thereto in this Court.  28 U.S.C. § 636(b); Fed. R.Civ. P. 72; DUCivR 72-3(a).

Dated this 4th day of March, 2008.

BY THE COURT:

_____
The Honorable Brooke C. Wells
UNITED STATES MAGISTRATE JUDGE