Thomas M. Melton (Bar No. 4999)
Lindsay S. McCarthy (Bar No. 5216)
Attorneys for the Plaintiff
SECURITIES AND EXCHANGE COMMISSION
15 West South Temple Street, Suite 1800
Salt Lake City, UT 84101
Telephone No.: (801) 524-5796

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

SECURITIES AND EXCHANGE COMMISSION,

PLAINTIFF,

v.

NOVUS TECHNOLOGIES, LLC, a Utah limited liability company, RALPH W. THOMPSON, JR., DUANE C. JOHNSON, RCH2, LLC, a Utah limited liability company, ROBERT CASEY HALL and ERIC J. WHEELER
DEFENDANTS,

and

U.S. VENTURES, LC, a Utah limited liability company, U.S. VENTURES INTERNATIONAL, LLC, a Utah limited liability company, ROBERT L. HOLLOWAY, ONLINE STRATEGIES GROUP, INC., a Delaware corporation, and DAVID STORY

RELIEF DEFENDANTS

Civil No. 2:07CV00235

Judge Tena Campbell

Magistrate Judge Brooke C. Wells

**FINAL JUDGMENT OF DISGORGEMENT, PREJUDGMENT INTEREST AND CIVIL PENALTY AGAINST DEFENDANT ROBERT CASEY HALL**

Plaintiff Securities and Exchange Commission (the "Commission") has filed a Motion for Disgorgement, Prejudgment Interest and Civil Penalty against Robert Casey Hall. The Court has already entered an Order Imposing Injunctive Relief and Staying Motion for Contempt Against Defendant Robert Casey Hall on July 2, 2007. (Docket No. 115.) The Commission seeks relief to recover some of the millions of dollars misappropriated by Defendant Robert Casey Hall ("Hall"). Hall has filed no responsive pleadings.[1] Having reviewed the Commission's Motion, its Memorandum and exhibits thereto, and having heard this cause on September 30, 2010,[2] the Court finds as follows:

## FINDINGS OF FACT

1. Robert Casey Hall ("Hall") is a Utah resident. Hall was a member and registered agent for RCH2, LLC. Hall solicited investors on behalf of RCH2.

2. RCH2, LLC ("RCH2") was a Utah limited liability company. RCH2 had its principal place of business at 14032 Canyon Vista Lane, Draper, Utah. RCH2 claimed to be engaged in activities related to real estate investments.

3. U.S. Ventures, LLC ("U.S. Ventures") was a Utah limited liability company with its principal place of business at 3899 East Parkview Drive, Salt Lake City, Utah. U.S. Ventures purported to be in the business of generating profits through investment in the futures market. U.S. Ventures received investor funds from Hall.

---

[1] After the hearing, Mr. Hall filed a *pro se* "objection" (see Docket No. 674) contending, without evidentiary support, that he had no notice of the hearing, that he did not violate the asset-freeze order, and that he did not have the money the SEC sought. His arguments are not only late but unpersuasive. (See also Pl.'s Mem. Opp'n to Hall Objection (Docket No. 674).)

[2] Mr. Hall did not appear at the hearing despite proper notice.

4. Robert L. Holloway ("Holloway") was the manager and registered agent of U.S. Ventures. By February 2006, U.S. Ventures was running a Ponzi scheme as capital from investors was being used to pay returns to earlier investors.

5. Hall sold unregistered securities through unsecured promissory notes to approximately fifty investors, raising at least $18 million.

6. Hall told investors that funds would be placed in low-risk investments. Investors were told that their funds would be placed in a holding account and leveraged for different investment opportunities, including real estate, generating more money than necessary to make the monthly interest payments to investors.

7. Instead of the low-risk investment opportunity promoted by Hall, RCH2's records reflect that approximately half of all investor funds were invested in futures trading, S&P 500 options, foreign currency, with U.S. Ventures or other risky investments.

8. Before investing funds with U.S. Ventures, Hall did little due diligence to ensure investor funds were safe as he represented to investors. In fact, Holloway informed Hall that trading in futures was highly risky. Despite this warning, between May 2006 and April 2007, Hall transferred over $8 million to U.S. Ventures or other risky day trading activities.

9. At the end of each month, U.S. Ventures wired money into an account controlled by Hall. Of the $3.6 million RCH2 invested with U.S. Ventures, only $218,462.00 was returned to a Hall-controlled bank account as purported returns. This money was used to pay investors their monthly interest. These funds, however, were not returns generated by investments but were funds from new investors.

10. Hall did not tell investors that a majority of investor funds would be placed in high-risk futures trading, S&P 500 options, foreign currency, with U.S. Ventures or in other risky investments instead of low-risk real estate investments.

11. Hall did not tell investors about the significant losses U.S. Ventures sustained or losses sustained by other RCH2 investments. Hall did not disclose to investors that payments made to investors were not interest payments, but instead were funds from new investors.

12. Hall knew, or was reckless in not knowing, that U.S. Ventures lost over $9 million in investor funds during 2006.

13. Hall failed to inform investors that their funds would be used by Hall for apparent personal purposes, including transferring funds to his wife, or for making monthly interest payments to other investors.

14. During 2006 and 2007, Hall misappropriated approximately $2,422,636 of investor funds (including $702,728 for personal expenses and $1,719,908 in payments to himself). Hall knew how the investor funds were spent and what kind of return on investments RCH2 received because he controlled the RCH2 Chase bank accounts.

15. On April 11, 2007, the Commission sought an Order from the Court enjoining Hall, among others, from further violations of federal securities laws and freezing his assets. This Court issued an Order Freezing Assets and Prohibiting Destruction of Documents ("Asset Freeze Order") on April 11, 2007.

16. On April 12, 2007, Hall's attorney, Knute A. Rife, accepted service of the Summons, Complaint and other documents, including the Asset Freeze Order.

17. On April 13, 2007, Hall, through counsel, stipulated to the entry of a Preliminary Injunction and extension of the Asset Freeze Order ("Stipulated Preliminary Injunction") until further order of the Court. The Court entered the Stipulated Preliminary Injunction regarding RCH2, LLC and Robert Casey Hall on April 16, 2007.

18. Despite knowledge of the Asset Freeze Order and agreeing to an extension of that Order, on April 13, 2007, Hall requested that Cunningham Commodities, LLC ("Cunningham Commodities") transfer all funds from an account in the name of Robert Casey Hall, LLC to Arpeggio Investments, LLC ("Arpeggio").

19. Hall transferred $729,008 from the Robert Casey Hall, LLC account to an Arpeggio account also with Cunningham Commodities. This money was subsequently transferred from the Arpeggio account on April 17, 2007.

20. On April 19, 2007, the Commission filed a motion for Order to Show Cause Why Robert Casey Hall should not be Held in Contempt for Violating the Court's Asset Freeze Order. On May 17, 2007, this Court issued an Order to Show Cause.

21. On June 29, 2007, Hall Stipulated to the Entry of Judgment Imposing Injunctive Relief Against and Staying the Commission's Motion for Order to Show Cause. The Order Imposing Injunctive Relief provides that should the Commission and Hall fail to stipulate to an amount of disgorgement, prejudgment interest and civil penalty to be paid by Hall, the Commission may request the Court to impose such relief.

22. The Commission and Hall have not stipulated to an amount for disgorgement, prejudgment interest or a civil penalty.

## CONCLUSIONS OF LAW

Based on the foregoing, the Court enters the following conclusions of law:

1. Hall received ill-gotten gains from violations of the securities laws. Hall made material misrepresentations of fact or made material omissions in connection with the purchase or sale or offer or sale of securities. Hall acted with scienter. Hall's scheme or artifice to defraud used the means and instrumentalities of interstate commerce.

2. Hall transferred funds in violation of a court-ordered asset freeze.

3. Hall is liable for disgorgement in the amount of $3,151,644.00 plus prejudgment interest of $772,859.29,[3] for a total of $3,924,503.29.

4. Hall is liable for a third tier civil penalty.

**WHEREFORE**:

### I.

**IT IS ORDERED, ADJUDGED AND DECREED** that Defendant Robert Casey Hall is liable for disgorgement of $3,151,644.00, representing profits gained as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $772,859.29, and a civil penalty in the amount of $130,000 pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3). Defendant shall satisfy this obligation by paying $4,054,503.29 within 14 days after entry of this Final Judgment to the Court appointed Receiver, Lon A. Jenkins, 170 S. Main St., #1500, Salt Lake City, Utah 84101, together with a cover letter identifying Robert Casey Hall as a defendant in this action; setting forth the title and civil action number of this action and the

---

[3] See Errata filed by SEC (Docket No. 697).

name of this Court; and specifying that payment is made pursuant to this Final Judgment. Defendant shall simultaneously transmit photocopies of such payment and letter to the Commission's counsel in this action. By making this payment, Defendant relinquishes all legal and equitable right, title, and interest in such funds, and no part of the funds shall be returned to Defendant. Defendant shall pay post-judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

The Commission may, by motion, propose a plan to distribute the Fund subject to the Court's approval. Such a plan may provide that Fund shall be distributed pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002. Regardless of whether any such Fair Fund distribution is made, amounts ordered to be paid as civil penalties pursuant to this Judgment shall be treated as penalties paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, Defendant shall not, in any Related Investor Action, benefit from any offset or reduction of any investor's claim by the amount of any Fair Fund distribution to such investor in this action that is proportionately attributable to the civil penalty paid by Defendant ("Penalty Offset"). If the court in any Related Investor Action grants such an offset or reduction, Defendant shall, within 30 days after entry of a final order granting the offset or reduction, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the United States Treasury or to a Fair Fund, as the Commission directs. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this Judgment. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Defendant by or on behalf of one or more investors based on substantially the same facts as

alleged in the Complaint in this action.

**II.**

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

**III.**

There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Clerk of the Court is ordered to enter this Final Judgment forthwith and without further notice.

DATED this 8th day of December, 2010.

_____
TENA CAMPBELL
CHIEF JUDGE
United District Court for the District of Utah