IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>NOVUS TECHNOLOGIES, LLC; RALPH W. THOMPSON, JR.; DUANE C. JOHNSON; RCH2, LLC; ROBERT CASEY HALL; and ERIC J. WHEELER,<br><br>Defendants,<br><br>and<br><br>U.S. VENTURES, LLC; U.S. VENTURES INTERNATIONAL, LLC; ROBERT L. HOLLOWAY; ONLINE STRATEGIES GROUP; and DAVID STORY,<br><br>Relief Defendants. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br>Case No. 2:07-CV-235-TC |

In an October 2010 order, the court found that Defendant Ralph W. Thompson acted as an unregistered securities broker-dealer; sold unregistered securities, and made material misrepresentations or omitted material information regarding the nature and value of those securities. (Oct. 20, 2010 Order & Mem. Decision (Dkt. No. 677) at 2.) The court granted summary judgment to the SEC on the issue of Mr. Thompson's strict liability under the Securities Act of 1933 ("Securities Act") Sections 5(a) and 5(c), Securities Exchange Act of 1934 ("Exchange Act") Sections 15(a) and 15(b), and Securities Act Sections 17(a)(2) and

17(a)(3). (Id.) Because genuine disputes of material facts remain on the question of Mr. Thompson's state of mind, the court did not grant summary judgment on the SEC's claim of liability under Securities Act Section 17(a)(1) and Exchange Act Section 10(b). (Id.)

The court held two evidentiary hearings and received additional briefing on the SEC's motion seeking an order that Mr. Thompson disgorge ill-gotten gains, pay prejudgment interest, and pay a penalty. The court has now reviewed the transcripts of those hearings, the memoranda submitted by the parties, the relevant case law, and, based on its review, ORDERS Mr. Thompson to pay a **$7,500 penalty**, **disgorge $623,101.00**, and pay **prejudgment interest** in the amount of **$180,758.97.**

## ANALYSIS[1]

### Disgorgement

The SEC asks the court to order Mr. Thompson to disgorge all the Novus money he used on personal expenses and for the business expenses of Novus. "In the exercise of its equity powers, a district court may order the disgorgement of profits acquired through securities fraud." SEC v. Patel, 61 F.3d 137, 139 (2d Cir. 1995). The purpose of disgorgement is not punitive but rather to prevent the unjust enrichment of the wrongdoer. "The district court has broad discretion not only in determining whether or not to order disgorgement but also in calculating the amount to be disgorged." SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1474-75 (2d Cir. 1996). "[D]isgorgement need only be a reasonable approximation of profits causally connected to the

[1]The court's earlier order (Dkt. No. 677) detailed Mr. Thompson's actions and the reasons the court found him liable under the securities laws. The court will discuss only those facts that are necessary to explain its decision here.

violation." SEC v. First City Fin. Corp., Ltd., 890 F.2d 1215, 1231 (D.C. Cir. 1989). Any "risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty." Id. at 1232.

The Accounting

Gil Miller testified at the February 7, 2011 evidentiary hearing. Mr. Miller, an accounting expert, had analyzed the financial and related records of Novus Technologies. Mr. Miller prepared reports and exhibits showing the financial transactions of Novus from August 2006 until April 2007 ("the relevant period"). (See Am. Expert Report of Gil A. Miller (Feb. 7, 2011 Hr'g Ex. 1); Chart of Receipts and Disbursements for Novus Technologies from August 2006 to April 2007 (Am. Ex. 1 to Report); Chart of Novus Operating Payments (Feb. 7, 2011 Hr'g Ex. 2).).[2] These documents and Mr. Miller's testimony established that Mr. Thompson controlled the money coming into and going out of Novus. During the relevant period, Mr. Thompson used $214,501 of Novus's money for personal expenses. During that same period, Mr. Thompson used $408,600 for the operating expenses of Novus.

Mr. Thompson has made no serious attempt to rebut these figures except, perhaps, to argue that he should not be required to disgorge the operating expenses and that he is now impecunious. But "'the overwhelming weight of authority hold[s] that securities law violators may not offset their disgorgement liability with business expenses.'" SEC v. Kenton Capital, Ltd., 69 F. Supp. 2d 1, 16 (D.D.C. 1998) (quoting SEC v. Hughes Capital Corp., 917 F. Supp.

[2]At the hearing, Mr. Thompson acknowledged that Mr. Miller's accounting was, for the most part, correct. (Tr. of Feb. 7, 2011 Evidentiary Hr'g (Dkt. No. 708) at 7.) And Mr. Thompson has not offered any persuasive evidence to rebut Mr. Miller's conclusions.

1080, 1086 (D.N.J. 1996)). And Mr. Thompson's contention that he has no money to pay disgorgement is not persuasive. "[F]inancial hardship is not grounds for denying disgorgement." SEC v. Robinson, No. 00 CIV. 7452 RMB AJP, 2002 WL 1552049, at *8 (S.D.N.Y. July 16, 2002).

Mr. Thompson's Testimony

Earlier, Mr. Thompson had filed an affidavit in opposition to the SEC's motion for summary judgment. (Dkt. No. 627.) He also testified at the recent evidentiary hearing. Both his affidavit and his hearing testimony leave no doubt that Mr. Thompson refuses to acknowledge that he did anything wrong: he hotly disputes that Novus was a Ponzi scheme (even in the face of overwhelming financial evidence that it was); continues to argue that he could have made the "investments" profitable if the SEC had not stopped him; and, in general, blames everyone but himself for the losses his investors suffered. Even more disturbing are the letters that the court has received from the Novus investors, apparently with Mr. Thompson's approval. These investors echoed Mr. Thompson's fallacious insistence that the SEC and even the court-appointed receiver, not Mr. Thompson, are to blame for their losses.

In light of the above evidence and the applicable law, the court finds that Mr. Thompson must disgorge $214,501 in personal expenses and $408,600 in operating expenses, for a total of $623,101.

**Prejudgment Interest**

"'The decision whether to grant prejudgment interest and the rate used if such interest is granted are matters confided to the district court's broad discretion, and will not be overturned on appeal absent an abuse of that discretion." First Jersey Sec., 101 F.3d at 1476 (2d Cir. 1996)

(quoting Endico Potatoes, Inc. v. CIT Group/Factoring, Inc., 67 F.3d 1063, 1071-72 (2d Cir. 1995)). When making the decision whether to grant prejudgment interest, a district court must consider "'(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court.'" Id. (quoting Wickham Contracting Co. v. Local Union No. 3, 955 F.2d 831, 833-34 (2d Cir. 1992)).

The court is persuaded that an award of prejudgment interest is appropriate here. In an SEC enforcement action, "the remedial purpose of the statute takes on special importance." Id. Further, "[r]equiring payment of interest prevents a defendant from obtaining the benefit of what amounts to an interest free loan procured as a result of illegal activity." SEC v. Moran, 944 F. Supp. 286, 295 (S.D.N.Y. 1996).

The court uses the IRS underpayment rate to calculate the interest. "That rate reflects what it would have cost to borrow the money from the government and therefore reasonably approximates one of the benefits the defendant derived from [his] fraud." First Jersey Sec., 101 F.3d at 1476. The period of time the SEC used to calculate prejudgment interest begins on the date this action was filed and ends on March 31, 2011. With these dates and using the IRS underpayment rate, the SEC calculated the amount of prejudgment interest to be $180,758.97. (SEC Supp. Mem. (Dkt. No. 714) at 8 & Ex. B.) The record supports the SEC's calculation. Accordingly, the court orders Mr. Thompson to pay prejudgment in the amount of $180,758.97.

**Penalties**

The SEC asks that the court impose a first tier penalty against Mr. Thompson, pointing

out that a court can impose a first tier penalty for a violation of the securities laws even without a finding of scienter. The first tier authorizes penalties of up to $7,500 for each violation of the securities laws. 15 U.S.C. §§ 77t(d)(2), 78u(d)(3)(B); 17 C.F.R. § 201.1002 (increasing maximum amounts of civil penalties under the Securities Act and the Exchange Act in order to account for inflation).

Mr. Thompson contends that "a modest penalty should suffice to do justice here." (Thompson Reply at 5, Dkt. # 718.) The court may consider several factors when determining whether to impose civil penalties, including "(1) the egregiousness of the violations at issue, (2) defendant's scienter, (3) the repeated nature of the violations, (4) defendants' failure to admit to their wrongdoing, (5) whether defendants' conduct created substantial losses or the risk of substantial losses to other persons; (6) defendants' lack of cooperation and honesty with authorities, if any; and (7) whether the penalty that would otherwise be appropriate should be reduced due to defendants' demonstrated current and future financial condition." SEC v. Lybrand, 281 F. Supp. 2d 726, 730 (S.D.N.Y. 2003).

Because the question of Mr. Thompson's intent has yet to be decided, the court cannot evaluate the first and second factors. The third factor is also neutral: although the fraud was relatively brief, the court is mindful that it ended only because of the SEC investigation. But the fourth and fifth factors weigh heavily in favor of a penalty. As discussed, the court was struck by Mr. Thompson's total failure to admit wrongdoing. The financial records show that Mr. Thompson's actions did cause substantial losses to his investors. Looking at the final two factors, the court concludes that they do not weigh either for or against the imposition of a penalty. Nothing in the evidence shows that Mr. Thompson has failed to cooperate with the

authorities but, again, because of his total failure to acknowledge any wrongdoing and his belligerent attitude towards the SEC, the court cannot find that he has been honest and cooperative. And finally, although Mr. Thompson claims he has no money to pay any penalty, he has not produced any persuasive objective evidence to support that claim.

Analyzing all of these factors, the court concludes that imposition of a first tier penalty is warranted. But in view of the amount of disgorgement that the court has ordered, the court concludes that a fine of $7,500 is appropriate.

**Fair Fund**

The SEC has requested that the court establish a Fair Fund pursuant to the Sarbanes Oxley Act of 2002 for distribution of penalties and disgorgement monies to investors. If the SEC wishes to pursue the establishment of a Fair Fund, the court directs the SEC to submit a proposed order no later than July 11, 2011.

**ORDER**

For the foregoing reasons, the court ORDERS Mr. Thompson to pay a **$7,500 penalty**, **disgorge $623,101.00**, and pay **prejudgment interest** in the amount of **$180,758.97**. If the SEC wishes to establish a Fair Fund, the SEC must submit a proposed order to the court no later than July 11, 2011.

DATED this 23rd day of June, 2011.

BY THE COURT:

Tena Campbell

TENA CAMPBELL
District Court Judge